(680 P.2d 307)

No. 55,650

IN THE MATTER OF THE ADOPTION OF JASON LEE MULLET, A Minor Child.

Opinion filed April 26, 1984.

*M. Moran Tomson,* of Johnson, for the appellant.

*Gary R. Hathaway,* of Hathaway and Kimball, of Ulysses, for the appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

FOTH, C.J.: The trial court denied the petitioner-stepfather's petition for the adoption of Jason Lee Mullet, holding that the consent of Jason's natural father was required. Petitioner appeals.

Jason was born on January 9, 1975. His parents were divorced on November 14, 1978, and his mother later married Donald Casey, who now seeks to adopt the child.

The stepfather sought to show that the natural father had failed to assume the duties of a parent for two consecutive years and that therefore his consent to the adoption was not necessary. In support of his position, the stepfather pointed out that the natural father was in arrears in his child support payments, and had not visited or otherwise been in contact with his son during the previous two-year period. The natural father countered by showing that he had made substantial child support payments of over one-half the amount due during the previous two years, and

that the mother and stepfather were hostile to him whenever he attempted to contact his child, so he just decided to abandon his attempts at visitation until the child grew older.

The underlying facts in this case are not substantially in dispute. All agree that the natural father paid at least $1400 of the $2400 he owed in child support for the two years preceding the filing of the petition for adoption. The father concedes that he did not visit his son during the two-year period, nor did he send remembrances other than one card. Also, he made a substantial down payment on a new van while he was in arrears on his child support.

On the other hand, the mother admits that she denied the natural father any opportunity to visit with his child and that she wishes to cut the father out of his child's life. The mother's new husband, the petitioner, feels the same way. He testified that he would rather not even receive the $100 per month court-ordered child support. No one denies that petitioner punched the natural father in May 1979, when the father arrived to pick up the child for visitation, although the parties view the incident from different perspectives.

The only dispute is over the ultimate fact of whether the natural father had failed to carry out the duties of parent for the past two years. It is well established that this is a question to be determined by the trier of fact. *Aslin v. Seamon,* 225 Kan. 77, 587 P.2d 875 (1978); *In re Waters,* 195 Kan. 614, 617, 408 P.2d 590 (1965). The trial court's decision was that the father's admitted delinquencies did not support a finding that he had failed to carry out his parental duties for the previous two years.

In our view the case is controlled by two recent Supreme Court decisions reached on the same day. The first is *In re Adoption of Steckman,* 228 Kan. 669, 620 P.2d 319 (1980). The court there reviewed at length its previous cases dealing with K.S.A. 59-2102 and the kind of evidence required to show that a parent has so abandoned a child as to lose the right to object to its adoption. It found that a strict construction of the statute in favor of parental rights was in order, and concluded, "[i]n reassessing our holdings in earlier Kansas adoption cases, we interpret K.S.A. 59-2102(3) to refer to those parents who, by their actions, clearly show little or no interest in the welfare of their children." 228 Kan. at 674.

In that case the father of two children, although able, paid none of the $150 per month child support due over the two-year period. He remembered one child's birthday each year, once by a present and once by a phone call, and sent each a Christmas present both years. Those contacts, together with one or two visits, were held to be enough to maintain the father's rights as a matter of law; the trial court's finding that he had failed in his parental duties was reversed.

The second case is *In re Adoption of Harrington*, 228 Kan. 636, 620 P.2d 315 (1980). There the objecting father had fully paid his child support—albeit the bulk of it was paid just a month before the adoption petition was filed. He had not, however, visited his child during the critical two-year period and had sent but one birthday and one Christmas card. As in *Steckman*, the trial court found the father's actions inadequate to amount to the assumption of parental duties.

The Supreme Court again reversed, placing its emphasis not only on the payment of child support but on the conduct of the mother in discouraging visitation, attempting to cut the father out of the child's life, and requesting the father's consent to adoption.

We note that K.S.A. 59-2102 had been amended prior to the trial court's decision in this case to provide that "[i]n determining whether a parent's consent is required . . . the court may disregard incidental visitations, contacts, communications or contributions." K.S.A. 59-2102(*b*). This 1982 addition we read as a legislative response to *Steckman*. The few contacts there might well be found to be "incidental" contacts or communications. We do not read it as having any impact on *Harrington*. That case requires a court to look at the whole picture, balancing support payments against lack of visitation, and looking at the reasons, if any, for the lack of visitation.

Applying that test here, we find the 58% payment of support plus the father's reasons for nonvisitation sufficient to support the trial court's factual conclusions. The $1400, though inadequate, was more than an "incidental" contribution.

The judgment is affirmed.