No. 56,359

In The Matter of The Adoption of Alitia Suzette McMullen and Steven Ward McMullen, Jr., Minor Children.

(691 P.2d 17)

Opinion filed November 30, 1984.

*Michael H. Morgan,* of Legal Aid Society of Wichita, Inc., argued the cause and was on the brief for appellant Gail McMullen.

*Charles F. Harris,* of Kaplan, McMillan & Harris, of Wichita, argued the cause and was on the brief for appellee Kerrie McMullen.

The opinion of the court was delivered by

Miller, J.: This is an appeal by Gail McMullen, the natural mother of two minor children, Alitia and Steven McMullen, Jr., from an order of the Sedgwick District Court granting the petition of Kerrie McMullen, the stepmother of the children, for adoption. The issues presented are the meaning of the word "incidental," as it is used in K.S.A. 59-2102(b), and the constitutionality of that statute.

The statute, insofar as it is here applicable, reads as follows:

"59-2102. . . . (a) Before any minor child is adopted, consent must be given to such adoption by:

. . . .

"(4) one of the parents, if the other has failed or refused to assume the duties of a parent for two consecutive years or is incapable of giving such consent;

"(5) the legal guardian of the child, if both parents are dead or if they have failed or refused to assume the duties of parents for two consecutive years;

. . . .

"(b) In determining whether a parent's consent is required under subsection (a)(4) or (5), the court may disregard incidental visitations, contacts, communications or contributions.

"(c) Consent in all cases shall be in writing . . . ."

The facts are not in material dispute. Steven McMullen (whom we will refer to as Steven) and Gail McMullen are the natural parents of the two minor children, Alitia McMullen and Steven

McMullen, Jr. Steven and Gail were divorced in Sedgwick County on May 10, 1977. Steven was granted custody of the children, and Gail was granted reasonable visitation. Steven and the children have continued to reside in Wichita; Gail returned to North Dakota where her family lives, and she has continued to reside there. Gail returned to Wichita in November 1979 and visited with the children for two days; other than that, she has not seen the children since the divorce. Gail's father visited the children in Wichita in January 1980. Steven cooperated with Gail and with her father on these occasions.

Meanwhile, Steven married Kerrie in June 1979. There is evidence that since their marriage Kerrie has assumed the duties of a mother to the children. On May 24, 1983, Kerrie filed a petition for adoption of the two children. Steven filed his written consent to the proposed adoption. A critical issue for the trial court was whether Gail, during the two-year period, May 24, 1981, through May 24, 1983, failed or refused to assume the duties of a parent.

The evidence disclosed that during that two-year period Gail had no direct contact with the children. She did not telephone them or visit them, nor did she talk with her former husband. During 1981, she sent greeting cards on the children's birthdays and at Christmas; she sent them a camera at Christmas; and she sent them $10 sometime during the year. In 1982, she sent cards on Valentine's Day, Easter and Christmas. She sent a cosmetic kit to Alitia on her birthday. She sent $5 to Alitia and $10 to Steven. In 1983, she sent them Valentine cards, which were received. She testified that she also sent them Easter cards and a letter, but the trial court found that these were not received. In summary, during the critical two-year period, she sent the children a total of $25, two small gifts, and a few greeting cards. She did not see them during this period, she did not talk to them, she did not write them any letters, she did not inquire about their health or well-being. The greeting cards were signed, but contained no messages, no letters, and bore no return address.

The trial extended over a period of three days. The trial judge heard all of the parties' evidence, weighed it, and determined that Gail's "visitations, contacts, communications or contributions" to the children during the two-year period immediately prior to the filing of the petition for adoption were "incidental"

within the meaning of K.S.A. 59-2102(b), that Gail had failed and refused to assume the duties of a parent to the two minor children for two consecutive years preceding the filing date, and that her consent to the adoption was not required. The judge granted the petition, and Gail appeals.

Before we turn to the first issue, some background information may be helpful. In 1980, we decided the case of *In re Adoption of Steckman,* 228 Kan. 669, 620 P.2d 319 (1980). The trial court had granted the petition for adoption of two minor children by a stepfather, over the objection and without the consent of the natural father, who appealed. The natural father had paid no child support during the critical two-year period; but he had given the children a few small gifts, he had called his son on his birthday, he had seen the children once when they were in the public swimming pool, he had attempted to visit them one other time, and he had carried hospitalization insurance for both children during the entire two-year period. We reviewed the facts, gave the statute, K.S.A. 59-2102 (Weeks), strict construction, and concluded that the natural father had not wholly failed or refused to assume his parental responsibilities during the two-year period. We reversed the trial court and set aside the decree of adoption. At the time of *Steckman,* the statute did not contain what is now subsection (b), set forth earlier in this opinion. That provision was enacted into law in 1982.

Commenting on the new subsection, the Court of Appeals in *In re Adoption of Mullet,* 9 Kan. App. 2d 396, 680 P.2d 307 (1984), said:

"We note that K.S.A. 59-2102 [has] been amended . . . to provide that '[i]n determining whether a parent's consent is required . . . the court may disregard incidental visitations, contacts, communications or contributions.' K.S.A. 59-2102(b). This 1982 addition we read as a legislative response to *Steckman.* The few contacts there might well be found to be 'incidental' contacts or communications. We do not read it as having any impact on *Harrington* [228 Kan. 636, 620 P.2d 315 (1980)]. That case requires a court to look at the whole picture, balancing support payments against lack of visitation, and looking at the reasons, if any, for the lack of visitation." 9 Kan. App. 2d at 398.

Appellant urges us to construe "incidental" as meaning "something depending upon another which is termed the principal" or to mean something occurring merely by chance, without any intention—such as passing the children on the sidewalk, or accidentally running into them in the supermarket. Such a

definition would exclude intentional contacts—such as mailing a greeting card or sending a small gift. Such a narrow definition would not further the legislative intent.

Casual or chance happenings would not indicate that one is assuming or performing the duties of a parent, and would not establish any intention on the part of a parent to do so. We decline to adopt the narrow definition advocated by appellant. Instead, we hold that the term "incidental" as used in the statute means "casual; of minor importance; insignificant; of little consequence."

Reviewing the natural mother's contacts, communications and contributions to her two children over the two-year period, it is obvious that these were "incidental," as we have defined the term. There were no regular contacts, no letters, no phone calls, no requests for information, no interest shown in the children's health, schooling, development, or general welfare. They indicate no more interest in the children than might ordinarily be shown by a family friend or distant relative. The trial court was correct in viewing these contacts as "incidental."

We turn now to the concluding argument—that subsection (b) violates the due process clause of the United States Constitution. Appellant argues that the subsection provides no protection to a natural parent of her fundamental right and interest in her children when the trial court, through legislative sanction, disregards her relevant, material and uncontradicted evidence.

We do not so read the statute. On the contrary, the court is required by law to receive, consider and weigh all the relevant evidence. K.S.A. 59-2278(d) specifically provides that:

"Upon the hearing of the petition, the court shall consider . . . *all evidence* offered by any interested party. If the court is of the opinion that the adoption should be made, it shall make a final order of adoption . . . ." (Emphasis supplied.)

The statutes do not direct the court to disregard any evidence; first the court must receive, weigh and consider all evidence. Then, under K.S.A. 59-2102(b), the court may—if in the exercise of sound judicial discretion and in view of all the evidence in the case, it wishes to do so—disregard contacts of a parent with the child or children which are casual, insignificant, or of little consequence—contacts which do not logically demonstrate that

the parent has been assuming and performing the duties of a parent.

We agree that parental rights are fundamental in nature and are constitutionally protected. *Sheppard v. Sheppard,* 230 Kan. 146, 150, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982). The welfare of children is also a matter of state concern. *Sheppard* at page 149. In *Sheppard,* we said:

"The test as to whether a statute comports with the due process clause is whether the legislative means selected has a real and substantial relation to the objective sought, or whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community." Syl. ¶ 1.

The obvious purpose of subsection (b) is to make clear that a court need not find total and absolute abandonment by a parent before the court may find that the consent of that parent is not necessary before an adoption may be permitted. It gives the adoption court discretion in determining only whether or not parental consent is necessary, particularly in those instances where there are some minor and insignificant contacts between parent and child, but not enough to demonstrate true parental interest, care and concern. It thus attempts to open the door for adoption and stable family life for the child where, without the legislative authorization of subsection (b), adoption may not have been possible. Such authorization furthers the prime objective of the adoption statutes—the best interests and well-being of the child.

We hold that K.S.A. 59-2102(b) does not offend the due process clause, and is not unconstitutional.

The judgment is affirmed.