(869 P.2d 240)
No. 69,489

In the Marriage of JUDITH BERNICE CALLAGHAN, *Appellee,* and PAUL JOSEPH CALLAGHAN, *Appellant.*

—

Opinion filed February 25, 1994.

*Paula B. Hurt,* of Hurt Legal Services, of Olathe, for appellant.

*Joe L. Norton,* of Watson, Ess, Marshall & Enggas, of Olathe, for appellee.

Before GREEN, P.J., BRAZIL, J., and MARION W. CHIPMAN, District Judge Retired, assigned.

CHIPMAN, J.: Judith B. Callaghan filed a petition for divorce from her husband, Paul J. Callagahan. Following two separate hearings, the trial court entered a decree of divorce. Under the divorce decree, the trial court awarded the wife child support of $306 per month for the parties' two minor children. The trial court used the proper child support worksheet and included the husband's monthly social security disability (SSD) payments in determining the amount of child support.

The husband appeals the trial court's judgment determining SSD payments to be income for the purpose of calculating child support. Additionally, he appeals the trial court's valuation of his wife's retirement plan and the division of marital assets.

The husband argues his SSD payments are not income for the purpose of calculating his child support obligation. He claims social security falls under the public assistance exception within the child support guidelines. The wife claims, however, her husband's SSD payments should be considered income.

The Kansas Child Support Guidelines (Administrative Order No. 83 [1993 Kan. Ct. R. Annot. 71-105]) must be followed when determining child support. *In re Marriage of Schletzbaum,* 15 Kan. App. 2d 504, Syl. ¶ 2, 809 P.2d 1251 (1991). The Kansas

Court of Appeals generally applies an abuse of discretion standard of review to child support decisions. See *In re Marriage of McPheter*, 15 Kan. App. 2d 47, 48, 803 P.2d 207 (1990). The issue in this case, however, involves interpretation of the child support guidelines. Do SSD payments fit within the definition of income under the guidelines? This question has not been answered by the Kansas appellate courts. Because the interpretation of the guidelines is a question of law, our review is unlimited. See *Memorial Hospital Ass'n, Inc., v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

A number of states include social security payments as gross income when calculating child support amounts. The relevant statutes, however, specifically include social security benefits under the definition of income. See *Lawhorn and Lawhorn*, 119 Or. App. 225, 850 P.2d 1126 (1993); *Lincoln v. Lincoln*, 840 P.2d 41, 42 (Okla. App. 1992).

The language in the Kansas guidelines, however, is not specific on this point because the term "income" is broadly construed. The child support guidelines require child support to be formulated from a gross income basis comprised of "income from all sources, excluding public assistance. . . . Other income, besides wages of the individual, includes all income which is regularly and periodically received from any source." 1993 Kan. Ct. R. Annot. 73.

As a consequence, the term "income" as it is used within the child support guidelines has been interpreted to mean "every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever." *In re Marriage of McPheter*, 15 Kan. App. 2d at 48 (quoting 2 Elrod, Kansas Family Law Handbook § 14.024, p. 14-11 [1990]).

The Kansas Supreme Court, in *Andler v. Andler*, 217 Kan. 538, 544, 538 P.2d 649 (1975), provided some insight relevant to the issue presented. In *Andler*, the court decided SSD payments for the children of a disabled parent could be credited against that parent's child support obligation. The court discussed the nature of social security payments:

"The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the work force the

protection and security of insurance against future disability. The fundamental nature of the Social Security system is a form of insurance in every sense of that word. Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are no more gratuitous than benefits paid out by a private insurance company." 217 Kan. at 543.

In *Andler*, the Kansas Supreme Court cited *Schmiedigen v. Celebrezze*, 245 F. Supp. 825, 827 (D.D.C. 1965), which specifically stated social security is not public assistance. 217 Kan. at 543. The description of social security in *Schmiedigen*, although dated, remains instructive to the courts. See *Barnett v. American Family Mut. Ins. Co.*, 843 P.2d 1302, 1310 (Colo. 1993).

Accordingly, we conclude SSD payments are "income" as defined within the Kansas Child Support Guidelines. Furthermore, the husband's SSD payments are not public assistance, and, therefore, the trial court was correct to include his SSD payments in calculating child support.

The husband next argues the direct social security payments to the wife for the children should act to satisfy his entire child support obligation. The husband's rationale is unfounded because the amount of his child support obligation is specifically determined by the formula within the child support guidelines. See *In re Marriage of Schletzbaum*, 15 Kan. App. 2d at 504. Moreover, the state guidelines, not the provisions of the Social Security Act, define the husband's child support obligation.

The husband next argues the trial court abused its discretion in the manner in which it valued his wife's retirement plan. Additionally, he claims the trial court erred in failing to apply such a valuation to his assets if it is determined the trial court was correct in applying the present cash value methodology to calculate the value of his wife's retirement plan.

In *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 316, 769 P.2d 678 (1989), this court recognized the present cash value method and the reserve jurisdiction method as the frequently used methods of valuation for retirement and pension plans. The court also acknowledged the valuation of future sources of income is a complex and speculative task.

The court stated, "Our intent is not to create an inflexible rule of property valuation, but rather to provide trial courts with

alternative methodologies that may prove effective." 13 Kan. App. 2d at 317. Other courts have adopted this philosophy. See *In re Marriage of Gallo*, 752 P.2d 47, 54-55 (Colo. 1988) (discussing and approving use of the present value method while recognizing the need for flexibility in allowing different methodologies).

"The present cash value method may be preferred if a current assignment is the goal, if the spouse's retirement benefits can be valued accurately, and if the marital estate includes sufficient equivalent property available to offset the award of the benefits to the employee spouse." 1 Elrod, Kansas Family Law Handbook § 10.028, p. 10-23 (1990).

A party must present the court with the evidence necessary to justify the valuation recommended by that party. See *In re Marriage of Sadecki*, 250 Kan. 5, 825 P.2d 108 (1992). While expert testimony is desirable, it is not necessary if the lawyers or the judge can calculate actuarial present values.

The reserve jurisdiction methodology is recommended when it is difficult to place a present value upon a retirement plan and when insufficient property remains to offset the present value of the plan. 1 Elrod, Kansas Family Law Handbook § 10.028, p. 10-22.

The wife presented to the trial court a demonstrative exhibit that designated the calculations and considerations in determining the present value of her retirement plan. In the valuation of her retirement plan, the exhibit referred to the taxes, life expectancy, interest rates, and future retirement earnings of the wife. No evidence or argument suggested the wife's retirement fund could not be accurately valued; the evidence suggested an individual accounting was kept of the funds in her retirement plan.

The husband, however, provides no compelling argument or evidence to suggest the trial court's valuation of his wife's retirement plan was wrong. The burden is on the appellant to furnish a record showing the claimed error. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, Syl. ¶ 6, 697 P.2d 858 (1985). In the absence of an adequate record, the appellate court presumes the action of the trial court was proper. *State v. Bright*, 229 Kan. 185, 190-91, 623 P.2d 917 (1981).

Because the husband failed to offer a reasonable alternative value of his wife's retirement plan, the trial court did not abuse

its discretion by adopting the present cash value method to value his wife's retirement plan.

The husband next argues the trial court erred by allowing the wife to reduce her retirement plan's value by subtracting 12 years of contributions she made to the plan before their marriage. The Kansas Family Law Handbook directly refutes his claim by stating that pension funds accumulated before marriage should be deducted. 1 Elrod, Kansas Family Law Handbook § 10.028, p. 10-24.

Finally, the husband argues the court erred by using the present cash value method on his wife's retirement plan but not utilizing similar methodology to value his savings account, commodities, and individual retirement account. He, however, fails to indicate in his record on appeal any evidence he presented to the trial court as to the proposed valuation of his savings account, individual retirement account, or commodities. Furthermore, he maintains the burden to produce a valuation for the court to consider. 250 Kan. at 12.

In addition, the husband fails to explain the characteristics of his savings account, individual retirement account, and commodities that would justify application of the present cash value method to these assets. Most of these assets already have a recognizable present value without the need to apply the present value method used on the wife's retirement plan.

The husband next argues the trial court erred by evenly dividing the marital property between them. Because he claims he lacks present and future earning capacity and he believes his wife enjoys present and future earning capacity, he claims the equal division of marital property was unreasonable.

In dividing the parties' property, the trial court stated a substantial marital estate existed and the property would be divided equally between the parties. Moreover, the trial court referred to *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 505, 839 P.2d 541 (1992), to support its decision to "lump" the parties' property together and then divide it equally between the parties.

K.S.A. 1993 Supp. 60-1610(b)(1) directs the division of property between divorcing parties. The statutory provision states the court should make a just and reasonable division of the property. The court is to consider various factors, including the age of the

parties, the duration of the marriage, property owned by the respective parties, the manner in which property was acquired, and the future earning capacities of the parties.

All things considered, the husband's disability does not make the trial court's equal division of property an abuse of discretion. On the contrary, the record indicates he received one-half of the marital assets. Moreover, these assets, valued at $122,495, include a rental duplex, the parties' residence, mutual funds, and his individual retirement account. Additionally, the trial court set over to him nonmarital assets valued at $99,000. Finally, the permanency of his disability was called into question by his attorney when she argued his disability could end at any time.

Inasmuch as our standard of review is abuse of discretion for cases involving a division of property issue, the trial court is provided broad discretion in dividing the assets of divorcing parties. Absent a clear showing of abuse, the appellate court will not disturb the lower court's ruling. *In re Marriage of Schwien*, 17 Kan. App. 2d at 505 (citing *Powell v. Powell*, 231 Kan. 456, Syl. ¶ 1, 648 P.2d 218 [1982]). If reasonable persons could disagree over the actions taken by the trial court, then no abuse of discretion occurred. See *Bohl v. Bohl*, 232 Kan. 557, 561, 657 P.2d 1106 (1983).

Accordingly, we conclude the trial court did not abuse its discretion in dividing the assets of the parties.

Affirmed.