(944 P.2d 157)
No. 77,632

In the Matter of the Adoption of K.J.B., a minor female child; L.D.B., a minor male child; and R.J.B., a minor female child.

Opinion filed August 8, 1997.

*Loy D. Johnson,* of Pugh & Pugh, of Wamego, for the appellant.

*Jeff Elder,* of Wamego, for the appellee.

Before PIERRON, P.J., PADDOCK, S.J., and DAVID PRAGER, Chief Justice Retired, assigned.

PIERRON, J.: The natural father of K.J.B., L.D.B., and R.J.B., minor children, appeals a judgment granting the stepfather the right to adopt the children. The district court determined the fa-

ther's consent to the adoption was unnecessary because he had failed to assume the duties of a parent during the 2 years preceding the filing of the adoption petition. On appeal, the father argues the district court erred in determining that his social security disability payments, a portion of which were paid to the children's mother, did not constitute child support or financial support so as to rebut the presumption that he failed to assume parental duties as set forth in K.S.A. 59-2136(d). Additionally, the father contends the district court erred by failing to consider the time he was institutionalized for mental disabilities in determining that he had only nominal or incidental contacts with the children. We affirm.

The mother and father of K.J.B., L.D.B., and R.J.B. were divorced in 1989. The mother was given residential custody of L.D.B and R.J.B. and the father was given residential custody of K.J.B. This arrangement lasted until May 1989, when all three children began residing with the mother as a result of a child in need of care proceeding regarding K.J.B. The mother married the petitioner/stepfather in May 1991. The mother testified she has lived at the same residence since she remarried.

Following the divorce, the father was ordered to pay $254 per month in child support for the two children in the mother's custody. The mother never requested a change in the amount of support after all three children were placed in her custody. The mother testified the only check she ever received from the father was one for $98.

In 1991, the father filed for social security disability benefits and the children began receiving a portion of these benefits, which were back-dated to 1990. The father testified it is the advice of his physician that he not seek employment. From 1990, the children received $255 per month in social security benefits. The mother claimed the benefits were less than what the children should have received because the father claimed parentage of another child in order for that child's mother to receive a portion of the benefits.

The father exercised regular visitation for approximately 1 year after the children began residing with their mother. On June 29, 1992, the district court entered an order approving the change of custody of all three children to the mother. The court permitted

visitation by the father, but due to the father's mental problems, the visitation was to be under the direct supervision of the Pawnee Mental Health Center. The father exercised four supervised visits with the children in the following 3 months.

On September 23, 1992, the father filed a motion to set specific visitation rights. After filing the motion, the father had a visit with the children for a birthday party, and other visits also took place when the father volunteered his time. On February 11, 1993, the district court entered an order allowing visitation by the father at his home for 3 hours on alternating weekends, with the visits increasing an hour each visit until a full weekend was allowed. The father exercised his visitation rights under this order until September 1993. On October 20, 1993, the mother filed a motion to alter the father's visitation schedule. The father exercised no visitation or contact with the children from that point on.

On January 4, 1994, the district court entered an order modifying the father's visitation rights in response to the mother's motion to alter. The father did not appear at the January 4, 1994, hearing. He was granted certain visitation rights, but the judge ordered the visitation stayed until the father appeared and requested the same to be reinstated. However, the court permitted visitation in the mother's home under her supervision. The mother testified the district court stayed the visitation because the father had not visited the children since September and had received two DUI's.

Approximately a month after the court stayed the father's visitation, he called the mother, and she tried to arrange visitation in her home. The mother testified the father told her that was not correct and hung up the phone. She did not hear from him again. The father has not filed any legal proceedings regarding visitation or custody. The mother indicated the father sent only two of the three children birthday cards in 1994 and 1995. Additionally, the children received Christmas cards in 1994, but nothing for Christmas 1995.

The father is mentally disabled and suffers from depression and agoraphobia, a fear of strange places with large numbers of people. He acknowledged he takes several medications for his mental ill-

ness. He claims that when he takes his medications, he is able to function as a normal person. He stated that shortly after the mother filed the motion to alter visitation in September 1993, he was involuntarily hospitalized in Osawatomie State Hospital from October 1993 through December 1993.

The father testified he called the stepfather in April 1994 and was told that the children were not his anymore, they were the stepfather's children, and to never call again. The father testified he did not call the children because of the stepfather's command. The father stated that as a result of the inability to see his children, he voluntarily checked himself into Osawatomie State Hospital and then was transferred to Topeka State Hospital from May 1994 to July 1994. When the father was released from the hospital, he was sent to a halfway house in Liberal, Kansas, where he lived from July 1994 through November 1994. Because of a DUI conviction, the father then spent November and December 1994 in the Riley County jail.

From January 1995 through July 1995, the father lived with his own father in Wamego. He went to a facility in Georgia for the month of July 1995 to prepare himself for the litigation concerning his children. He returned to Wamego and lived there until April 1996. At the time of the hearing on whether his consent to the adoption was necessary, the father resided in Topeka in an assisted living home for the mentally ill.

On November 6, 1995, the stepfather, with the consent of the mother, filed a petition for adoption of the three children. The adoption proceedings were heard before a district magistrate judge. The petition claimed the father's consent was unnecessary because he had failed or refused to assume the duties of a parent for the 2 years prior to the filing of the adoption petition.

The issue of whether the father's consent was required for the adoption was removed to the district court. The court held an evidentiary hearing on the matter and reviewed briefs submitted by the parties. On August 23, 1996, the court held that within the 2 years previous to the filing of the adoption petition, the father had only nominal and incidental contacts with the children and that the social security benefits the children received were not sufficient to

require his consent to the adoption. The court concluded the father had failed to assume his parental responsibilities for the 2-year period and his consent to the adoption was unnecessary. The district court returned the case to the magistrate court for the continuation of the adoption proceedings.

On September 16, 1996, the magistrate judge granted the stepfather's petition for adoption. On the same day, the father filed a motion to stay the adoption and a notice of appeal concerning the district court's order finding his consent to be unnecessary. On September 20, 1996, the father withdrew the motion for a stay and filed a notice of appeal from the decree of adoption.

The issue before us is not the father's parental fitness. See *In re Adoption of Wilson*, 227 Kan. 803, Syl. ¶ 1, 610 P.2d 598 (1980). Rather, we are to determine whether he has performed certain duties. The controlling Kansas statute is K.S.A. 59-2136(d):

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

Initially, K.S.A. 59-2136(d) sets out the general principle that consent to an adoption is unnecessary for a father who has failed or refused to assume parental duties within the 2 years prior to the filing of the adoption proceeding. The next two sentences of K.S.A. 59-2136(d) merely provide explanatory provisions to help the trial court make this determination. The statute permits the trial court to disregard incidental visitations, contacts, communications, or

contributions, and a rebuttable presumption of failure to assume parental responsibilities arises when there have been no substantial financial contributions, as required by judicial decree, made by a parent to his or her child within the 2-year period.

The father first argues that the social security benefits his children received because of his disability are sufficient to fulfill his child support obligation under Kansas law and, therefore, rebut the presumption that he has not assumed his parental duties in the last 2 years. In response, the stepfather indicates he never argued that the disability payments should not have been credited against the father's child support and the district court never made a finding that the payments did not rebut the presumption in K.S.A. 59-2136(d). Rather, the stepfather argues the district court examined all the circumstances and held the father did not assume his parental duties within the 2 years prior to the filing of the adoption petition.

"Interpretation of a statute is a question of law." *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). "[T]he legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results." *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992). "When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The father cites several cases demonstrating how social security payments constitute income with regard to child support obligations. None of these cases deal with an adoption situation. They deal only with whether social security payments are to be considered in the determination of what amount of child support is owed.

In *Andler v. Andler*, 217 Kan. 538, Syl. ¶ 4, 538 P.2d 649 (1975), the court stated:

"Where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under a divorce decree to the extent of, but not exceeding, his monthly obligation for child support."

See also *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 869 P.2d 240 (1994) (Social security disability payments are not public assistance and, accordingly, are to be included as income in calculating child support under the Kansas Child Support Guidelines.).

A case somewhat similar in nature to the case at bar is *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 897 P.2d 181 (1995). There, in the 2 years preceding the filing of the adoption petition by the stepfather, the father had no contact with the child and did not call or send letters or gifts. As a result of the parties' divorce, the father was under an obligation to pay $200 per month in child support. In the critical 2-year period, the father had paid from his earnings $1,100 in child support when $4,800 was due and provided some health insurance for the child. However, including time periods prior to the 2-year period, the father owed approximately $6,000 in child support arrearages. The father alleged he had maintained a savings account in his mother's name into which he paid the child support. The trial court found the father's payments to be insufficient to rebut the presumption that he failed or refused to assume the duties of a parent by failing to provide a substantial portion of the child support. 21 Kan. App. 2d at 97.

In a 3-way split opinion, this court reversed the trial court's decision. The "majority" conceded that a substantial amount of the ordered child support had not been paid. However, it concluded that "as a matter of law, it cannot be said that the $1,100 and medical insurance coverage do not constitute substantial efforts and assumption of parental duties, incomplete and unsatisfactory though they may be." The majority ruled that the father's support was not what it should have been, but it was not so insubstantial as to deprive him of his rights of parenthood. 21 Kan. App. 2d at 99.

In a concurring opinion, Judge Lewis stated his position that "it is only when a parent has failed to exercise all of the duties of a parent, including those of financial support and love and affection, that his right to consent to an adoption may be dispensed with." Judge Lewis stressed that a lack of financial support, standing

alone, should not be sufficient to sever the ties of a dutiful and loving parent. 21 Kan. App. 2d at 102.

In a dissenting opinion, Judge Green stated that the father failed to show any affection, care, or interest in the child and failed to pay approximately 77% of his court-ordered child support during the relevant time period. He concluded the father had failed to rebut the presumption that he had failed or refused to assume his parental duties. 21 Kan. App. 2d at 104.

There was no evidence presented at the instant district court hearing as to whether the father had any child support arrearages. However, there was evidence that the mother received social security disability payments from the father in an amount equalling or exceeding the amount of his court-ordered child support payment.

However, the only parental effort made by the father in this matter was to apply for government benefits for the children and himself. While the monetary sum for child support was being satisfied, it was being satisfied through governmental transfer payments. Child support is therefore current from the standpoint of the number of dollars having been paid in from some source at the behest of the father. But this was a totally passive act by him except for the minimal effort of applying for the benefits.

The actions of the father in this case do not constitute positive parental action of the kind exhibited by the father in *C.R.D.*

The father also argues that when a natural father is mentally ill and has been institutionalized either voluntarily or involuntarily, and has been unable to maintain a continuous and ongoing relationship with his minor children because of the illness, the trial court must consider the father's disability and examine all the surrounding circumstances before terminating parental rights through an adoption.

"In an adoption proceeding, the question of whether an individual has failed or refused to assume the duties of a parent for the required period of time pursuant to K.S.A. 1986 Supp. 59-2102(a)(3) is ordinarily a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing."

"When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below." *In re Adoption of F.A.R.*, 242 Kan. 231, Syl. ¶¶ 1, 2, 747 P.2d 145 (1987).

The father contends that circumstances beyond his control have prevented him from maintaining contact with his minor children. He argues his mental illness has prevented him from enjoying a normal father-child relationship during the critical 2-year period; the mother and stepfather made any contact with the children difficult; and he has been in and out of treatment and institutions. He maintains that if all the surrounding circumstances are examined, especially the limiting nature of his mental illness, the court erred in dispensing with his consent. He claims he "very much wants to have and maintain a long-term relationship with his children and because of the treatments which he has had, this can now be accomplished, providing the court does not sever his parental rights."

By analogy, the father cites cases involving stepparent adoption in which one of the natural parents was incarcerated. See *In re Adoption of F.A.R.*, 242 Kan. at 236 (father continuously incarcerated; trial court must determine whether incarcerated parent pursued the opportunities and options which may be available to carry out parental duties to the best of his or her ability); *In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995) (in applying rebuttable presumption in K.S.A. 59-2136[d]), trial court required to take into consideration the period of time the father was in prison and unable to support children). He argues the district court's decision affords an incarcerated person more rights than an individual suffering from mental illness.

Contrary to the father's claim, the district court took into consideration his mental illness and treatment within the required time period. The court ruled as follows:

"I reviewed the authority submitted by the petitioner and now find that in the two years next preceding the filing of the petition for adoption herein, that the

natural father, [T.B.], had only nominal and incidental contact with the children whatsoever. There were several erratic card mailings, and there was on his, initiated by him on behalf of the children, a filing for social security benefits, but aside from that, there was no other meaningful or significant contact whatsoever between him and the children. *The court finds that upon review that the treatment that he received although it was, I don't dispute the necessity was well advised and that the endeavor was well taken, was not such that it would have significantly impaired his ability should he have chosen to establish and maintain contact with these children to the extent that it could be found by the court that he had failed or had exercised the duties of a parent.* The court, therefore, finds that the petitioner has established the allegations of his petition, that the respondent has failed to assume the duties of a parent for two years next preceding the filing of the petition and that his consent is not necessary or required to proceed forward with the adoption as prayed." (Emphasis added.)

The father attempts to justify his failure to show any love and affection to his children by insisting that the mother and stepfather made it difficult to see the children and that the stepfather prohibited him from calling or seeing the children. On the other hand, the stepfather argues it was not reasonable for the father to sit back and not seek counsel to enforce his visitation rights if he felt they were being obstructed. The father also failed to attend the January 4, 1994, hearing where the district court modified visitation to the mother's home. The father denied receiving notice for this hearing. The father tried to obtain Flint Hills Legal Services as counsel, but Flint Hills refused because of a conflict.

Today, Kansas courts have noted that "incidental" contacts and contributions as contemplated by K.S.A. 59-2136(d) and its predecessor statute, K.S.A. 59-2102(b) (Ensley), are to be disregarded when determining whether parental duties have been assumed. "Incidental" has been defined as "casual, of minor importance, insignificant, and of little consequence." *In re Adoption of McMullen,* 236 Kan. 348, Syl. ¶ 1, 691 P.2d 17 (1984).

The district court correctly found the father failed the "love and affection" side of his parenting responsibilities. During the 2 years preceding the filing of the adoption petition, the father was in a treatment facility for 5 months, in a halfway house in Liberal for 4 months, living with his father in Wamego (the same small town where the children lived) for 13 months, and incarcerated in the

Riley County jail for 2 months. The father's excuse that it was difficult to see his children is no excuse for not loving and nurturing them. There is no evidence in the record how the father's mental illness "limited" him from maintaining contact with his children. Furthermore, even taking into account that the father was institutionalized for a portion of the 2 years, there is no evidence he "pursued the opportunities and options which [were] available [to him] to carry out [parental] duties to the best of his . . . . ability." *In re Adoption of F.A.R.*, 242 Kan. 231, Syl. ¶ 7.

For whatever reason, the father failed to see or contact the children. The birthday cards he sent to two of the children, not all three, and the Christmas cards in 1994 clearly constitute incidental contacts and communications. As correctly found by the district court, the father had only "nominal and incidental contacts" with the minor children.

The district court noted that social security disability payments were made to the children. The district court made a conclusion of law that these payments were not sufficient, *in and of themselves,* to require the father to consent to the adoption, *i.e.,* he had not assumed his parental duties. "Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Tucker v. Hugoton Energy Corp.,* 253 Kan. 373, Syl. ¶ 1, 855 P.2d 929 (1993). "This court's review of conclusions of law is unlimited." *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991).

Parental duties include not only financial support but also the natural and moral duty of a parent to show affection, care, and interest toward his or her child. See *In re Adoption of F.A.R.,* 242 Kan. at 239; *In re Adoption of Wilson,* 227 Kan. 803, 805, 610 P.2d 598 (1980); *In re Sharp,* 197 Kan. 502, 508, 419 P.2d 812 (1966). However, the foregoing cases do not stand for the principle that parental rights may always be abrogated if a parent fails in any one of the parent's obligations. A failure in one area may be balanced by action in another, or it may not.

Cases such as this must be decided under certain principles of law, but are very fact sensitive. All surrounding circumstances must be considered and a decision made as to whether the parent's efforts constitute a sufficient assumption of parental duties to prevent a termination of parental rights through stepparent adoption. See *In re Adoption of F.A.R.*, 242 Kan. at 239-40.

We find in the instant case that the father failed in both his positive financial obligations and in his responsibilities to provide even a minimum of parental love and affection. Luckily, there was social security to provide assistance for his children's financial needs and a stepfather who was willing to provide parental love and affection to the children.

Because of the complete failure of the father to provide either, we need not and do not make the difficult decision of determining how little of either one or both responsibilities is enough to stave off a finding of a failure to exercise parental duties. While some of the father's failings are explicable due to his mental problems, all of them are not. A parent may not totally fail (except for incidental efforts) in exercising parental duties and avoid the import of K.S.A. 59-2136(d) by pleading that some of the failure was explainable.

We find the district court's decision was consistent with the law governing these issues, particularly when we consider our standard of review.

Affirmed.