No. 77,632

In the Matter of the Adoption of K.J.B., L.D.B., and R.J.B.
(959 P.2d 853)

*Loy D. Johnson,* of Law Office of Gregory E. Saindon, PA, of Ellis, and *Grant D. Griffiths,* of Law Office of Floyd Sorrick, of Washington, argued the cause and were on the briefs for appellant.

*Jeff Elder,* of Wamego, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SIX, J.: This is a K.S.A. 59-2136(d) stepparent adoption case. The father of three minor children appeals the district court's order granting the stepfather's petition for adoption. The district court found that the father had failed to assume the duties of a parent during the 2 years next preceding the filing of the adoption petition; therefore, his consent to the adoption was not required. The Court of Appeals affirmed. *In re Adoption of K.J.B,* 24 Kan. App. 2d 210, 944 P.2d 157 (1997). We granted the father's petition for review. K.S.A. 20-3018(b); Rule 8.03 (1997 Kan. Ct. R. Annot. 52).

The questions before us are: (1) whether social security payments for the benefit of the minor children resulting from the father's filing for and receiving disability benefits qualify as credits against the father's liability for child support in a K.S.A. 59-2136(d) adoption case; and, (2) if they do, was the district court correct in holding that the father's consent was not required because he had "failed or refused to assume the duties of a parent" under K.S.A. 59-2136(d).

The answer is "yes" to the first question and "no" to the second. We reverse the district court and the Court of Appeals.

## FACTS

The narrative background set out in 24 Kan. App. 2d 210 is repeated here. Additional facts have been added in brackets. The stepfather's petition for adoption was filed on November 6, 1995. The K.S.A. 59-2136(d) 2-year period is November 6, 1993, to No-

vember 6, 1995. At the time the adoption petition was filed, K.J.B. was 11, L.D.B., 9, and R.J.B., 7.

The facts were set forth in the Court of Appeals opinion, 24 Kan. App. 2d at 211-14, as follows:

"The mother and father of K.J.B., L.D.B., and R.J.B. were divorced in 1989. The mother was given residential custody of L.D.B and R.J.B. and the father was given residential custody of K.J.B. This arrangement lasted until May 1989, when all three children began residing with the mother as a result of a child in need of care proceeding regarding K.J.B. The mother married the petitioner/stepfather in May 1991. The mother testified she has lived at the same residence since she remarried.

"Following the divorce, the father was ordered to pay $254 per month in child support for the two children in the mother's custody. The mother never requested a change in the amount of support after all three children were placed in her custody. The mother testified the only check she ever received from the father was one for $98. [The mother received this amount in the month before the June 1996 hearing.]

"In 1991, the father filed for social security disability benefits and the children began receiving a portion of these benefits, which were back-dated to 1990. The father testified it is the advice of his physician that he not seek employment. From 1990, the children received $255 per month in social security benefits. [We disagree. The mother testified that although monthly social security payments for the benefit of the children had been received, the amount had only been raised to $255 beginning in January 1996. There was no testimony as to the amount of the monthly checks before that time.] The mother claimed the benefits were less than what the children should have received because the father claimed parentage of another child in order for that child's mother to receive a portion of the benefits.

"The father exercised regular visitation for approximately 1 year after the children began residing with their mother. On June 29, 1992, the district court entered an order approving the change of custody of all three children to the mother. The court permitted visitation by the father, but due to the father's mental problems, the visitation was to be under the direct supervision of the Pawnee Mental Health Center. The father exercised four supervised visits with the children in the following 3 months.

"On September 23, 1992, the father filed a motion to set specific visitation rights. After filing the motion, the father had a visit with the children for a birthday party, and other visits also took place when the father volunteered his time. [The father volunteered for a social service organization and would take the children with him while he did his volunteer work.] On February 11, 1993, the district court entered an order allowing visitation by the father at his home for 3 hours on alternating weekends, with the visits increasing an hour each visit until a full weekend was allowed. The father exercised his visitation rights under this order until September 1993. On October 20, 1993, the mother filed a motion to alter

the father's visitation schedule. The father exercised no visitation or contact with the children from that point on.

"On January 4, 1994, the district court entered an order modifying the father's visitation rights in response to the mother's motion to alter. The father did not appear at the January 4, 1994, hearing. He was granted certain visitation rights, but the judge ordered the visitation stayed until the father appeared and requested the same to be reinstated. However, the court permitted visitation in the mother's home under her supervision. The mother testified the district court stayed the visitation because the father had not visited the children since September and had received two DUI's.

"Approximately a month after the court stayed the father's visitation, he called the mother, and she tried to arrange visitation in her home. The mother testified the father told her that was not correct and hung up the phone. She did not hear from him again. The father has not filed any legal proceedings regarding visitation or custody. The mother indicated the father sent only two of the three children birthday cards in 1994 and 1995. Additionally, the children received Christmas cards in 1994, but nothing for Christmas 1995.

"The father is mentally disabled and suffers from depression and agoraphobia, a fear of strange places with large numbers of people. He acknowledged he takes several medications for his mental illness. He claims that when he takes his medications, he is able to function as a normal person. He stated that shortly after the mother filed the motion to alter visitation in September 1993, he was involuntarily hospitalized in Osawatomie State Hospital from October 1993 through December 1993.

"The father testified he called the stepfather in April 1994 and was told that the children were not his anymore, they were the stepfather's children, and to never call again. The father testified he did not call the children because of the stepfather's command. The father stated that as a result of the inability to see his children, he voluntarily checked himself into Osawatomie State Hospital and then was transferred to Topeka State Hospital from May 1994 to July 1994. When the father was released from the hospital, he was sent to a halfway house in Liberal, Kansas, where he lived from July 1994 through November 1994. Because of a DUI conviction, the father then spent November and December 1994 in the Riley County jail.

"From January 1995 through July 1995, the father lived with his own father in Wamego. He went to a facility in Georgia for the month of July 1995 to prepare himself for the litigation concerning his children. [The father testified that he spent his time in Georgia at a treatment program. The type of treatment was not specified.] He returned to Wamego and lived there until April 1996. At the time of the hearing on whether his consent to the adoption was necessary, the father resided in Topeka in an assisted living home for the mentally ill.

"On November 6, 1995, the stepfather, with the consent of the mother, filed a petition for adoption of the three children. The adoption proceedings were heard before a district magistrate judge. The petition claimed the father's consent was

unnecessary because he had failed or refused to assume the duties of a parent for the 2 years prior to the filing of the adoption petition.

"The issue of whether the father's consent was required for the adoption was removed to the district court. The court held an evidentiary hearing on the matter and reviewed briefs submitted by the parties. On August 23, 1996, the court held that within the 2 years previous to the filing of the adoption petition, the father had only nominal and incidental contacts with the children and that the social security benefits the children received were not sufficient to require his consent to the adoption. The court concluded the father had failed to assume his parental responsibilities for the 2-year period and his consent to the adoption was unnecessary. The district court returned the case to the magistrate court for the continuation of the adoption proceedings.

"On September 16, 1996, the magistrate judge granted the stepfather's petition for adoption. On the same day, the father filed a motion to stay the adoption and a notice of appeal concerning the district court's order finding his consent to be unnecessary. On September 20, 1996, the father withdrew the motion for a stay and filed a notice of appeal from the decree of adoption."

## DISCUSSION

A prologue to our discussion is formed by five concepts that guide the resolution of a K.S.A. 59-2136(d) case. Each one appears in either *In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995), or *In re Adoption of F.A.R.*, 242 Kan. 231, 747 P.2d 145 (1987).

The first concept is our standard of review.

"In an adoption proceeding, the question of whether an individual has failed or refused to assume the duties of a parent for the required period of time pursuant to K.S.A. 1986 Supp. 59-2102(a)(3) [now K.S.A. 59-2136(d)] is ordinarily a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing." 242 Kan. 231, Syl. ¶ 1.

We do not weigh the evidence or pass on the credibility of the witnesses. We review the evidence in the light most favorable to the party prevailing below. 242 Kan. 231, Syl. ¶ 2.

Here, however, in its journal entry, the district court held that "[t]he fact that the minor children herein have received social security benefits as a result of the biological father's disability is not sufficient, in and of itself, to require the biological father's consent to the petition for adoption filed herein." The question remains: Is the father's compliance with the court-ordered child support, after he initially signed up for the social security disability, enough

to override the almost complete lack of contact by the father with the children during the critical time period?

Our standard of review changes at this point. We are not called upon to weigh evidence or pass on the credibility of witnesses. The district court found that social security disability payments were made to the children. The district court concluded the payments were not sufficient, in and of themselves, to require the father's consent to the adoption. The conclusion follows that the father had not assumed his parental duties. "Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, Syl. ¶ 1. 855 P.2d 929 (1993). Our review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Second, the fitness of the natural father is not a controlling factor. *S.E.B.*, 257 Kan. at 271.

Third, the best interests of the child is not a controlling factor. *S.E.B.*, 257 Kan. at 271.

Fourth, adoption statutes are to be strictly construed in favor of maintaining the rights of a natural parent especially in a K.S.A. 59-2136(d) case. *S.E.B.*, 257 Kan. at 273.

Fifth, when the father is incarcerated and unable to fulfill customary parental duties, the court must decide whether he has pursued the opportunities and options available to carry out such duties to the best of his ability. *S.E.B.*, 257 Kan. at 273.

We now turn to a review of the father's summarized "contacts" with his children during the relevant statutory period (November 6, 1993, to November 6, 1995):

1. Social security benefits were paid monthly. Specific amounts are unknown, although $255 was the amount at the time of the hearing. The mother testified that the amount had been increased to $255 beginning in January 1996.

2. The father had no visitation or direct contact with children.

3. The father sent two of the three children birthday cards in 1994, and sent two of the three children birthday cards in 1995.

4. The father sent the children Christmas cards in 1994.

5. The mother said the father made one phone call to arrange visitation but hung up when he found that the court had ordered that visits be at the mother's house. The father denies he made this phone call.

6. The father called at 12:39 a.m. on April 27, 1994, to arrange a visit. He spoke to the stepfather. No visit was arranged.

7. The father did not appear at a January 4, 1994, hearing on change of visitation.

At all relevant times, the mother and children lived in Wamego, Kansas, at the same address. A summary of the father's location during the relevant period reflects the following:

1. October 1993 to December 1993: Osawatomie State Hospital, involuntarily hospitalized.

2. January 1994 to April 1994: Manhattan, Kansas.

3. May 1994 to July 1994: Topeka State Hospital.

4. July 1994 to November 1994: Liberal, Kansas, halfway house.

5. November 1994 and December 1994: Riley County jail (DUI sentences).

6. January 1995 to July 1995: Wamego, Kansas, living with his father.

7. July 1995: Georgia treatment program.

8. August 1995 to April 1996: Wamego, Kansas.

## The Social Security Payments

We next consider the district court's determination that the social security payments received by the mother for the benefit of the children based on the father's disability did not rebut the K.S.A. 59-2136(d) presumption.

K.S.A. 59-2136(d) is controlling.

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, *the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption* or is incapable of giving such consent. In

determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, *there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent.*" (Emphasis added.)

The italicized language concerning a rebuttable presumption was added in 1991. L. 1991, ch. 167, § 1. For a discussion of the history of K.S.A. 59-2136(d), see *S.E.B.*, 257 Kan. at 269.

We focus on whether the monthly social security payments qualify as child support under K.S.A. 59-2136(d). It is undisputed that the father was ordered to pay $254 per month in child support. Other than the social security payments, the father said he paid some child support but did not have a specific amount and provided no documentation.

The Court of Appeals rejected the father's reliance on *Andler v. Andler*, 217 Kan. 538, 538 P.2d 649 (1975), and *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 869 P.2d 240 (1994). Both cases held that social security payments are to be considered in the determination of what amount of child support is owed and credited. The Court of Appeals believed *Andler* and *Callaghan* were distinguishable because "[n]one of these cases deal with an adoption situation." 24 Kan. App. 2d at 215.

In a K.S.A. 59-2136(d) adoption, the court examines whether the nonconsenting parent has assumed parental duties during the 2 years preceding the filing of the petition for adoption. The social security payments should therefore be examined in the context of whether a parent has assumed his or her parental duties.

*Andler* and *Callaghan* examined social security payments in the context of the parties' resources. *Andler*, 217 Kan. at 544; *Callaghan*, 19 Kan. App. 2d at 337. We acknowledge the Court of Appeals factual distinction between *Andler* and *Callaghan* and this case. However, *Andler* holds that social security payments made to

children based on a father's disability constitute a satisfaction of child support payments required by a divorce decree.

In *Andler* we held:

"[W]here a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree." 217 Kan. at 544.

We apply the *Andler* rationale to this case.

K.S.A. 59-2136(d) allows the court to disregard incidental visits, contacts, communications, or contributions. The father may rebut the 59-2136(d) presumption that he failed to assume parental duties by showing that he provided a substantial portion of the judicially ordered child support. Here, the father does not directly take issue with the court's finding that his contacts with the children were incidental. He asserts, however, that the social security disability payments received by the mother for the children's support serve to rebut the presumption that he did not assume parental duties. We agree.

While we may disregard incidental visits, contacts, communications, or contributions under a strict construction of K.S.A. 59-2136(d), the father's contributions here were not incidental. "Incidental" has been defined in this context as "casual, of minor importance, insignificant, and of little consequence." *In re Adoption of McMullen*, 236 Kan. 348, Syl. ¶ 1, 691 P.2d 17 (1984). At the time of the hearing, the monthly contributions, which were backdated to 1990, were more than the court-ordered child support.

In *F.A.R.*, 242 Kan. 231, interpreting an earlier, similar version of K.S.A. 59-2136(d), we affirmed the district court's denial of a stepparent adoption. In *F.A.R.*, the father was incarcerated and the mother refused to force the children to visit their father in prison. The father was not ordered to pay child support, nor did he. 242 Kan. at 239.

In *F.A.R.*, we reiterated: "The duties of a parent addressed by the statute include not only the common-law duty of financial support, but also the 'natural and moral duty of a parent to show

affection, care and interest toward his or her child. [Citations omitted.]" 242 Kan. at 239.

Here, the father has provided financial support for his children—whether it be by accident or design.

Both the district court and the Court of Appeals appeared to focus on *F.A.R.*'s recognition of the "natural and moral duty of a parent to show affection, care and interest toward his or her child." Both courts concluded that the father's financial support was not sufficient to overcome his complete lack of "love and affection" duties. 24 Kan. App. 2d at 219, 221.

Under the facts of this case, while there was little or no affection, care, or interest shown to the children, the father did provide a substantial portion of the children's support. The father's consent was therefore necessary for the completion of this stepparent adoption.

### Parental Duties Under K.S.A. 59-2136(d)

The Court of Appeals found "that the father failed in both his positive financial obligations and in his responsibilities to provide even a minimum of parental love and affection." 24 Kan. App. 2d at 221. The district court reasoned that the social security payments "in and of themselves" were not sufficient to require the father's consent.

Because of its ruling that the social security payments were not credits on the child support obligation, the Court of Appeals did not reach the difficult question now before us. The question is: Must the father fail in both the financial and the affection, care, and interest aspects of parenting to fail under K.S.A. 59-2136(d) in assuming the duties of a parent?

The Court of Appeals observed:

"Because of the complete failure of the father to provide either [support or affection, care, and interest] , we need not and do not make the difficult decision of determining how little of either one or both responsibilities is enough to stave off a finding of a failure to exercise parental duties." 24 Kan. App. 2d at 221.

Having stated the question, we examine two cases each with similarities to this case: *In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995), and *In re Adoption of C.R.D.*, 21 Kan. App. 2d

94, 897 P.2d 181 (1995). The father in each of these cases failed
the affection, care, and interest side of parenting. The children in
*S.E.B.* were the same ages (9 and 7) as the two younger children
here. We observed in *S.E.B.* that children age 9 and 7, unlike in
*In re Adoption of Baby Boy S.,* 16 Kan. App. 2d 311, 822 P.2d 76
(1991), are of an age "where they are well aware of their father."
257 Kan. at 273. The district court, in *S.E.B.,* found that the father
"had showed little or no interest in the children for the five years
preceding the adoption petition." 257 Kan. at 268. The stepfather
and the mother during their marriage of over 4 years had provided
the sole financial support for S.E.B. and K.A.B. In reversing the
district court and vacating the stepparent adoption, we said:

> "The question in this case is whether the statute [K.S.A. 59-2136(d)] requires
> that a parent be financially able to pay the ordered support for the two-year period
> before the presumption is applicable. . . . To apply the statutory presumption
> of K.S.A. 59-2136(d), the courts are required to take into consideration the period
> of time that the father was incarcerated and unable to support the children.
>
> "Here, Father was incarcerated for 7 of the 24 months, approximately 30% of
> the two-year period. It is obvious from the facts that while in prison Father was
> not financially able to support the children. Because the fitness of the noncon-
> senting parent and the best interests of the children are not controlling factors
> under K.S.A. 59-2136(d), we must find that under the circumstances the judge
> improperly granted the adoption." 257 Kan. at 274.

The father in *S.E.B.* failed both the affection, care, and interest
and financial tests; however, because of his incarceration he was
not financially able under 59-2136(d) to provide support. Although
he failed in affection, care, and interest, he did not fail in assuming
parental duties under K.S.A. 59-2136(d).

The father in *C.R.D.* had no contact with the child and did not
call or send letters or gifts during the 59-2136(d) 2-year period.
The district court granted the stepparent adoption. In a split de-
cision, Green, J., dissenting, the Court of Appeals reversed. *C.R.D.*
however, affirmed the district court's finding of the father's failure
on the love and affection side of parenting. 21 Kan. App. 2d at 96.
The *C.R.D.* father did pay some child support (approximately 23%
during the 2-year period).

The *C.R.D.* issue was whether the father otherwise failed to as-
sume the duties of a parent, having failed on love and affection. 21

Kan. App. 2d at 96. *C.R.D.* reasoned that payment of $1,000 during the 2 years when $4,800 was due plus furnishing an insurance card sent by the father's ex-wife was sufficient.

The *C.R.D.* court said:

"Basic parental rights are fundamental rights protected by the Fourteenth Amendment to the Constitution of the United States. The right to be the legal parent of a child is one of these rights, which cannot be abrogated except for compelling reasons. See *Quilloin v. Walcott,* 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549, *reh. denied* 435 U.S. 918 (1979); *In re Guardianship of Williams,* 254 Kan. 814, 869 P.2d 661 (1994)." 21 Kan. App. 2d at 98.

We agree.
*C.R.D.* concluded:

"In the instant case, we do not believe the support payments and insurance benefits provided can reasonably be called insubstantial, as we believe that term must be defined in this context. The father's support of his child in this case was certainly not what it should have been. But it was not so insubstantial as to deprive him of his rights of parenthood." 21 Kan. App. 2d at 100.

Judge Lewis concurred. He reasoned:

"The evidence indicates without any doubt that the natural father failed to assume the 'love and affection' side of the duties of a parent.

"The other factor of parenthood is a financial one. On this side of the ledger, the absent father's performance is somewhat better. I believe that if we are going to judicially sever parental rights, there must be a failure to assume and perform the duties of a parent on both sides of the ledger. I conclude that under the evidence shown and on the basis of the traditional approach taken to this issue by our Supreme Court, the evidence does not show, as a matter of law, that the noncustodial father in this case failed to assume the duties of a parent insofar as those duties relate to financial obligations." 21 Kan. App. 2d at 101.

Our obligation here is to construe K.S.A. 59-2136(d) strictly in favor of maintaining the rights of natural parents. By applying a strict construction, we are compelled to reverse the district court and the Court of Appeals. We conclude that as a matter of law, the father here, who has provided a substantial portion of the child support as required by judicial decree has not "failed or refused" to assume the duties of a parent under K.S.A. 59-2136(d).

The effect of our holding is an endorsement of Judge Lewis' concurring opinion in *C.R.D.* To judicially sever parental rights

under K.S.A. 59-2136(d), there must be a failure "on both sides of the ledger."

We note disagreement in *C.R.D.* on whether 23% support is "substantial" under K.S.A. 59-2136(d). The resolution of that disagreement is not before us.

The father advances the impact of his mental illness as an explanation of his failure to assume parental obligations. Because of our disposition, we need not reach the mental illness issue.

Reversed.

ABBOTT, J., dissenting: I am of the opinion the legislature intended that the courts look at the entire picture in determining whether a parent has performed parental duties during the 2 years next preceding the filing of a petition for adoption pursuant to K.S.A. 59-2136. I would adopt the reasoning of the majority in the Court of Appeals' decision in this case.

This court has consistently held that "all the surrounding circumstances must be considered." *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987). Minor and insignificant contacts between parents and child are not sufficient because they do not "demonstrate true parental interest, care and concern." *In re Adoption of McMullen*, 236 Kan. 348, 352, 691 P.2d 17 (1984).

The trial court found, and the record supports the findings, that the father's mental health did not significantly impair the father's ability to assume his parental duties should he have chosen to establish and maintain contact with his children.

The father had no face-to-face contact with his three children despite living in the same rural community most of the period in question, nor did he have any contact by telephone. He did not attend school functions of any kind although he was notified of many of the events.

The trial judge found there was no meaningful or significant contacts whatsoever between the father and any of his three children.

As I read the trial judge's opinion and the Court of Appeals' decision, they clearly state that the social security payments should be credited as child support payments and considered in deter-

mining whether a parent has failed or refused to assume the duties of a parent. Both courts held the payments were not conclusive. I agree. The legislature was only providing that if one does not support a child, one must rebut a presumption that parental duties have not been performed. The fact that the father is providing support through a mandatory insurance plan that did not cost him a single penny more than it would have cost him if he did not have children, does not conclusively show the father was assuming his parental duties. He could not have prevented the payments had he wanted to. The social security payments only prevented the application of the presumption that the father has failed to assume his parental duties. The trial court should start from a clean slate and look at all the facts to determine whether the father has assumed his parental duties during the prescribed period, under the well-established rules previously set down by this court. I would affirm the trial court and the Court of Appeals.

McFARLAND, C.J., joins the foregoing dissent.